IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CV-156-FL

| | | |
|---|---|---|
| MELVIN HIGGINS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| JOHN F. LOGAN, | ) | (SEALED)[1] |
| | ) | |
| Appellee. | ) | |

This matter is before the court on appeal of an order of the United States Bankruptcy Court for the Eastern District of North Carolina, denying appellant's motion to incur debt. The issues raised have been briefed fully, and in this posture are ripe for ruling. For the following reasons, the judgment of the bankruptcy court is affirmed.

## BACKGROUND

Appellant petitioned for relief under Chapter 13 on June 8, 2016, and shortly thereafter, appellee John F. Logan ("Trustee") was appointed trustee. On September 18, 2017, the bankruptcy court confirmed the Chapter 13 plan presented by the parties. Among other things, the plan called for appellant to make payments of $505.00 for four months, and $554.00 for 56 months, for a total

---

[1] Where the court's order relies upon confidential information contained in the sealed materials in this case, the court SEALS this order. Within 14 days, the parties shall confer and tender by U.S. Mail to the clerk's office a proposed redacted order. If said order meets with the court's approval, it will be lodged on the public docket. If the court determines proposed redactions of any portion of this order not subject to sealing, further notice will follow.

plan base of $33,044.00. In February 2018, upon the appellant's motion, the bankruptcy court modified appellant's plan, increasing the 41 remaining payments to $951.00 per month.

On March 17, 2020, appellant filed a motion to incur debt, wherein appellant indicated that he and his wife desired to finance the purchase of a residence costing $450,000.00, where the monthly mortgage payment would not exceed $2,500.00. The trustee responded to the motion on March 31, 2020, stating that "[b]ased on the Schedules as filed and the current delinquency in plan payments, the Debtor will not be able to afford the proposed $2,500.00 payment for the purchase of real property." (Am. Resp. (DE 7-1) at 98). Thereafter, appellant emailed his updated pay stubs and income schedules to the Trustee and made a $1,500.00 payment, curing the delinquency in plan payments and satisfying his payment obligations for April 2020. (Transcript of Hearing ("Tr.") (DE 8) 2:11-15).

At telephonic hearing, following review of appellant's updated financial information, the Trustee indicated that he had no issues with appellant's motion to incur debt, in light of the significant increase in his income. (Tr. 3:16-23). Also at hearing, appellant indicated that he works for the United States Department of the Navy, his wife works for the United States Department of Defense, and together, their combined income and military disability pay amount to $13,630.00 per month. (Tr. 2:16-21). The bankruptcy court inquired about the payout percentage to unsecured creditors under appellant's plan, and upon hearing it was three percent, the bankruptcy court noted, "I have some real problems with buying a house worth almost a half a million dollars when we're having just a minimal distribution to the unsecured class. . . . It does not make good sense from a bankruptcy perspective." (Tr. 4:10-17).

Following the hearing, the bankruptcy court denied appellant's motion to incur debt, finding that the appellant "appears to be seeking to improve his lifestyle significantly while

discharging his liability for significant unsecured debt." (Bankr. Order (DE 7-1) at 103). The bankruptcy court further concluded that appellant "should not be permitted to purchase such an expensive residence under the circumstances of [his] case." (Id.). Appellant timely noticed appeal, and the parties filed record on appeal on May 26, 2020.

## COURT'S DISCUSSION

A.  Standard of Review

This court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a) to review the bankruptcy court's order. "An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts." 28 U.S.C. § 158(c)(2). "On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings." Harman v. Levin, 772 F.2d 1150, 1153 n.3 (4th Cir. 1985).[2] "Legal conclusions are reviewed de novo, but findings of fact will only be set aside if clearly erroneous." Schlossberg v. Barney, 380 F.3d 174, 178 (4th Cir. 2004).

B.  Analysis

1.  Local Bankruptcy Rule 4002-1(g)(5)

Appellant filed his motion to incur debt pursuant to Local Bankruptcy Rule 4002-1(g)(5), which provides:

> After the filing of the petition and until the plan is completed, a debtor shall not incur additional debt of $10,000 or more without prior approval from the court. The debtor shall file an application to incur the debt with a fourteen-day notice to the chapter 13 trustee. If no objection is filed, the court may approve the application without a hearing.

---

[2] Internal citations and quotation marks are omitted from all citations unless otherwise specified.

3

Local Bankruptcy Rule 4002-1(g)(5). According to appellant, the foregoing provision exceeds the bankruptcy court's rulemaking authority. As an initial matter, the court notes that appellant raises this issue for the first time on appeal, although it was susceptible to address in the bankruptcy court in the first instance. See In re Butala, No. 15-02624-5-SWH (Bankr. E.D.N.C. July 10, 2018) (addressing a debtor's challenge to Local Bankruptcy Rule 4002-1(g)(5) on similar grounds); In re Ripley, No. 14-01265-5-DMW, 2018 WL 735342, at *3 (Bankr. E.D.N.C. Feb. 6, 2018) (same). Appellate courts generally do not consider issues raised for the first time on appeal, absent exceptional circumstances. See Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 603 (4th Cir. 2004); Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993). In any event, this issue, even if timely raised, does not warrant reversal.

The bankruptcy court's authority to promulgate rules derives from 28 U.S.C. § 2075. Under that provision, Congress vested the Supreme Court with "the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11." 28 U.S.C. § 2075. "Such rules shall not abridge, enlarge, or modify any substantive right." Id. In turn, the Supreme Court has authorized "[e]ach district court . . . [to] make and amend rules governing practice and procedure in all cases and proceedings within the district court's bankruptcy jurisdiction which are consistent with—but not duplicative of—Acts of Congress." Fed. R. Bankr. P. 9029(a)(1). District courts may delegate this authority to bankruptcy judges of the district, see id., as was done by this court previously. See In re Local Bankruptcy Rules, Standing Order 87-PLR-3, (E.D.N.C. Oct. 8, 1987). "A local rule of bankruptcy procedure cannot be inconsistent with the Bankruptcy Code." No v. Gorman, 891 F.3d 138, 141 (4th Cir. 2018).

Appellant first argues that Local Bankruptcy Rule 4002-1(g)(5) exceeds the bankruptcy court's rulemaking authority because it abridges his substantive right to contract and purchase a home with a mortgage. Yet, appellant fails to identify any provision of the Bankruptcy Code that provides a Chapter 13 debtor with an unfettered right to incur post-petition debt. To the contrary, two statutes within the Bankruptcy Code curtail a debtor's ability to incur post-petition debt by requiring trustee approval. First, Section 1305(c) of the Bankruptcy Code provides that a claim for post-petition consumer debt shall be disallowed if the creditor "knew or should have known that <u>prior approval by the trustee of the debtor's incurring the obligation</u> was practicable and not obtained." 11 U.S.C. § 1305(c) (emphasis added). Second, Section 1328(d) prohibits a debtor from discharging a claim for post-petition consumer debt "if <u>prior approval by the trustee of the debtor's incurring such debt</u> was practicable and was not obtained." 11 U.S.C. § 1328 (emphasis added). Through the foregoing provisions, the Bankruptcy Code contemplates trustee supervision over a debtor's decision to incur post-petition debt. Rather than abridging any substantive right, Local Bankruptcy Rule 4002-1(g)(5) effectuates the trustee supervision requirement codified in Sections 1305(c) and 1328 by directing a debtor to "file an application to incur the debt with a fourteen-day notice to the chapter 13 trustee." Local Bankruptcy Rule 4002-1(g)(5).

The court recognizes that, unlike Local Bankruptcy Rule 4002-1(g)(5), the Bankruptcy Code does not explicitly require a debtor to obtain <u>court</u> approval before incurring post-petition consumer debt.[3] However, one court has concluded that the Bankruptcy Code may <u>implicitly</u> require court approval. That court explained:

> Section 1303 of the Bankruptcy Code (entitled "Rights and powers of debtor") states that "Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under section

---

[3] Although 11 U.S.C. § 364 requires court approval for a debtor engaged in business to incur unsecured debt, the parties agree that appellant is not a debtor engaged in business, within the meaning of the Bankruptcy Code.

5

> 363(b), 363(d), 363(e), 363(f), and 363(1)" of the Bankruptcy Code. Section 363(b) of the Bankruptcy Code addresses how, after notice and a hearing, a trustee may use, sell, or lease, other than in the ordinary course of business, property of the estate. If a chapter 13 debtor is going to buy a car postpetition—and use postpetition earnings to pay for it, isn't this a use of ***property of the estate*** outside of the ordinary course of business that needs court approval?[4]

In re Ward, 546 B.R. 667, 677 (Bankr. N.D. Tex. 2016) (emphasis in original).[5]  Other courts have found the court approval requirement to be intrinsic to the court's role as overseer of plan confirmation and modification. See In re Brown, 170 B.R. 362, 364 (Bankr. S.D. Ohio 1994) ("As postpetition earnings are the backbone of funding for the confirmed plan, subsequent credit transactions are subject to scrutiny by the Trustee and the Court.") (emphasis added). Acknowledging "two divergent views" that have developed among courts regarding whether a debtor not engaged in business must seek court approval before incurring post-petition debt, see In re Zvoch, 618 B.R. 734, 739 (Bankr. W.D. Pa. 2020) (collecting cases), this court finds the cases in favor of such a requirement to be more persuasive.

While not dispositive in itself, the court approval requirement also promotes the Bankruptcy Code's underlying purpose "to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." Williams v. U.S. Fid. & Guar. Co., 236 U.S. 549, 554–55 (1915). Indeed, by requiring oversight of a debtor's decision to incur post-petition debt, Local

---

[4] Debtor states in a conclusory fashion that "he is not using or encumbering an asset of the bankruptcy estate outside of the ordinary course which might implicate section 363." (Reply Brief (DE 17) at 26). However, he does not explain why use of post-petition earnings to purchase a car implicates 11 U.S.C. § 363, but use of post-petition earnings to purchase a home would not implicate that provision.

[5] Appellant argues that In re Ward conflicts with the Supreme Court's pronouncement that a bankruptcy court's equitable powers under 11 U.S.C. § 105(a) "can only be exercised within the confines of the Bankruptcy Code." Law v. Siegel, 571 U.S. 415, 421 (2014). However, in finding that a debtor must obtain court approval before incurring post-petition debt, the court in In re Ward did not rely on 11 U.S.C. § 105(a). Moreover, where the court does not base its analysis on 11 U.S.C. § 105(a), the court does not reach the parties' arguments with respect to that provision.

Bankruptcy Rule 4002-1(g)(5) shields the debtor from unnecessary encumbrances, so that he can emerge from bankruptcy with the intended fresh start.  See In re Bagby, 218 B.R. 878, 887 (Bankr. W. D. Tenn. 1998) ("[I]t is hoped that debtors will be able to break the cycles of poor financial judgment that may have led to the filing of their petitions in the first place . . . This protects not only the debtor, but all creditors whose claims are provided for in the confirmed plan."); In re Brown, 170 B.R. at 365 ("If chapter 13 debtors are to be rehabilitated, they must be educated and encouraged to enter into transactions that are in both their long-term and short-term best interests.").

Appellant challenges the reasonableness of Local Bankruptcy Rule 4002-1(g)(5) by noting that it requires him to obtain court approval in order to buy a house with a $2,500 monthly mortgage, but not to rent a residence with larger monthly payments.  However, "the financial repercussions of incurring a debt with repayment terms lasting as long as thirty years is barely comparable to the monetary commitment involved in a lease agreement for residential real property."  In re Ripley, 2018 WL 735342, at *4.  Appellant also contends that Local Bankruptcy Rule 4002-1(g)(5) is underinclusive because it does not apply to other decisions bearing on a debtor's finances, such as the decision to change jobs, apply for disability, work part-time, get married, adopt pets, or have children.  Yet, unlike the incurrence of debt, those decisions do not involve issues falling squarely within the special province of the bankruptcy court and bankruptcy law.

In light of the foregoing, the court finds that Local Bankruptcy Rule 4002-1(g)(5) does not abridge appellant's substantive rights.  Appellant's reliance upon Roseberry v. U.S. Tr. Interested Party, No. 18-01039-DRH, 2018 WL 6624202 (S.D. Ill. Dec. 18, 2018) is unpersuasive.  Roseberry involved a local bankruptcy policy that required all confirmation orders to include the following

language: "Should the debtor(s) acquire or receive any interest in property of more than nominal value . . . such property . . . shall constitute disposable income, the value of which must be paid into the debtor(s)' plan <u>as a payment under the plan</u> for the benefit of allowed general unsecured claim." 2018 WL 6624202, at *1 (emphasis in original). The court found the local policy to be invalid because it imposed a substantive requirement that was not present in the Bankruptcy Code. <u>Id.</u> at *3.

<u>Roseberry</u> is instructively distinguishable from the instant matter because it involved plan confirmation, a process governed by explicit statutory commands. <u>See</u> 11 U.S.C. § 1325(a) (listing specific requirements, which if satisfied, "the court <u>shall</u> confirm a plan") (emphasis added). In contrast, post-petition debt, is "complex area of Chapter 13 practice" and the "Code and Bankruptcy Rules do not manage postpetition claims very well. . . The result is too much uncertainty for debtors and postpetition claim holders . . . and a growing body of case law that is a testament to the lack of clarity in the Code and Rules." <u>In re Nacci</u>, 586 B.R. 733, 737 (Bankr. N.D. Ohio 2018). Thus, while 11 U.S.C. § 1325(a) provides debtors with a substantive right to a confirmed plan once certain enumerated requirements are satisfied, no commensurate provision in the Bankruptcy Code provides debtors with a substantive, definite right to incur post-petition debt. Accordingly, <u>Roseberry</u> is inapposite, and Local Bankruptcy Rule 4002-1(g)(5) does not abridge debtor's substantive rights.

Appellant also argues Local Bankruptcy Rule 4002-1(g)(5) exceeds the bankruptcy court's rulemaking authority because it is substantive, rather than procedural. Parties arguing that a local rule is substantive "face a heavy burden." <u>Specialized Loan Servicing, LLC v. Devita</u>, 610 B.R. 513, 523 (E.D.N.C. 2019); <u>see</u> <u>In re Walat</u>, 87 B.R. 408, 411 (Bankr. E.D. Va. 1988) (Local Bankruptcy Rules "are entitled to a presumption that they were promulgated with the proper

authority and do not affect substantive right. . . .Therefore, the parties objecting to a local rule as a substantive change in bankruptcy law, as is the situation here, have a heavy burden to prove their case.").

According to the United States Court of Appeals for the Fourth Circuit, "[i]f a regulation or rule enforces rights or imposes definite obligations on the parties, it is ordinarily considered substantive.  If, however, it really regulates procedure, . . .  the rule is to be deemed procedural." Associated Dry Goods Corp. v. E.E.O.C., 720 F.2d 804, 809 (4th Cir.1983).  Moreover, procedure is defined as the "judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." Id. (quoting Sibbach v. Wilson & Co., 312 U.S. 1, 14 (1941)).  Importantly, "merely because a local rule can affect the outcome of a case does not make it substantive."  Matter of Adams, 734 F.2d 1094, 1102 (5th Cir. 1984); see Specialized Loan Servicing, 610 B.R. at 523 ("A rule is not substantive because some applications of the rule affect substantive rights in some circumstances.").

Here, Local Bankruptcy Rule 4002-1(g)(5) is procedural.  It does not prohibit a debtor from incurring post-petition debt of $10,000.00 or more.  Rather, it specifies the process by which a debtor may seek to incur such debt.  As set forth herein, the Bankruptcy Code contemplates supervision over the incurrence of post-petition debt.  Local Bankruptcy Rule 4002-1(g)(5) merely effectuates that supervision by prescribing the manner in which it is exercised.

Appellant argues Local Bankruptcy Rule 4002-1(g)(5) is substantive because it is "not merely a menial reporting task."  (Reply Brief (DE 17) at 20).  While procedural rules may impose disclosure or reporting requirements upon litigants, they are not so limited.  See In re Walat, 87 B.R. at 412 (finding a local bankruptcy rule that regulated the form of plan to be procedural rather

than substantive). Next, appellant argues, without citing any authority in support, that the Local Bankruptcy Rule 4002-1(g)(5) is substantive because courts have developed standards for interpreting it. Even assuming this basis confers substantive characteristics to Local Bankruptcy Rule 4002-1(g)(5), the rule is rationally capable of classification as procedure, and therefore, a proper exercise of the bankruptcy court's rulemaking authority. Id. ("The bankruptcy court's power to make rules governing practice and procedure includes the power 'to regulate matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either.'") (quoting Hanna v. Plumer, 380 U.S. 460, 472 (1965)).

In sum, where Local Bankruptcy Rule 4002-1(g)(5) is procedural, and does not abridge appellant's substantive rights, the bankruptcy court did not exceed its rulemaking authority in promulgating it.

2. Motion to Incur Debt

Having concluded that Local Bankruptcy Rule 4002-1(g)(5) is valid, the court turns now to consider whether the bankruptcy court applied the proper standard in addressing appellant's motion to incur debt. According to appellant, courts apply Local Bankruptcy Rule 4002-1(g)(5) inconsistently, resulting in arbitrary and unpredictable outcomes. In light of this apparent lack of uniformity, appellant urges adoption of the following standard as the proper inquiry when ruling on a motion to incur debt: whether the debtor can successfully complete the confirmed bankruptcy plan after taking on the additional debt. Because appellant claims he can satisfy this standard, the bankruptcy court's ruling must be reversed.

Contrary to appellant's assertions, however, bankruptcy courts in this district and others address motions to incur post-petition debt in a uniform manner.[6] While the facts and

---

[6] In an attempt to showcase the lack of uniform standards, appellant identifies 14 cases where the bankruptcy court denied motions to incur debt. (See Appellant Brief (DE 14) 24-27). While each of these cases present a unique

10

circumstances of each case vary, bankruptcy courts generally consider the same factors, including: the reasonableness of the debt; the debtor's best interest; the benefit, if any, to creditors; whether the debt is necessary for the completion of the Chapter 13 plan; and the debtor's ability to perform under the plan.[7]  See, e.g., In re Ripley, 2018 WL 735342, at *4 (considering the debtor's ability to perform under the plan, the debtor's best interest, the necessity of the debt, and the benefit to creditors); In re Nacci, 586 B.R. at 737 ("Reasonableness and necessity are often key components of the determination."); In re Ward, 546 B.R. at 679 ("Is the borrowing reasonable and necessary? Is it in the best interests of the debtor and the estate? Is there a sound business justification for this? Did the debtor shop and find reasonable market terms? Was this the most favorable option? Is this an exercise of reasonable business judgment? And will this interfere with the confirmed plan?"); In re Key, 465 B.R. 709, 713 (Bankr. S.D. Ga. 2012) ("[F]or approval, the need to incur consumer debt should be necessary to the debtor's performance under a Chapter 13 plan.").

While the debtor's ability to complete the Chapter 13 plan is a relevant factor, it is not the sole consideration.  Appellant's reliance on In re Butala, No. 15-02624-5-SWH (Bankr. E.D.N.C. July 10, 2018) is misplaced.  In that case, the bankruptcy court did not hold that ability to complete a bankruptcy plan is the sole factor to be considered when ruling on a motion to incur debt;  in fact, there was no motion to incur debt before the bankruptcy court.   Rather, in addressing a challenge to Local Bankruptcy Rule 4002-1(g)(5), the bankruptcy court explained that the rule furthered the purpose of the Bankruptcy Code because it ensures that debtors complete their plans.

---

set of facts and circumstances, the bankruptcy court consistently considers the same factors in each, revealing uniform address of the motions.

[7]  Where the court does not base its analysis on the trustee's proposed "good faith standard," it does not address the appellant's arguments opposing such a standard.

Here, the bankruptcy court applied the appropriate standard in ruling on appellant's motion. At hearing, the bankruptcy court inquired about the creditor's payout percentage under appellant's plan. After discovering that the dividend was only three percent, the bankruptcy court concluded: "I have some real problems with buying a house worth almost a half a million dollars when we're having just a minimal distribution to the unsecured class . . . It does not make good sense from a bankruptcy perspective." (Tr. 4:10-17). The bankruptcy court similarly noted that appellant "appears to be seeking to improve his lifestyle significantly while discharging his liability for significant unsecured debt . . . [he] should not be permitted to purchase such an expensive residence under the circumstances of [his] case." (Bankr. Order (DE 7-1) at 103).

In considering the reasonableness of the debt, and the lack of any benefit to the creditors, the bankruptcy court properly applied relevant factors. See, e.g., In re Key, 465 B.R. at 713 ("Debtors have not shown the need to take on this additional mortgage while paying their unsecured creditors nothing."); In re Ripley, 2018 WL 735342, at *4 (emphasis in original) ("[O]wnership of the Property would not convey any benefit to the Debtors' creditors beyond the prospective minor increase in monthly disposable income . . . The Motion is distinguishable from cases in which the court has allowed a debtor to incur debt to purchase a vehicle to travel to and from work. In those cases, the debtors need the vehicle to generate income.").

Even assuming, arguendo, that a debtor's ability to perform under the plan is the sole factor to be considered, appellant was delinquent in his plan payments when he filed the motion to incur debt. Although appellant cured the deficiency, and made his April plan payment prior to his April 6, 2020, hearing, his delinquency while unburdened by the mortgage casts doubt on his ability to make plan payments after incurring a $450,000.00 debt. See In re Nacci, 586 B.R. at 738 ("Assuredly, approving postpetition debt when a debtor has not demonstrated the ability to pay

their prepetition debt appears nonsensical."). Although the bankruptcy court did not discuss the debtor's ability to complete his plan, this court may affirm the bankruptcy court on any ground supported by the record, even if the bankruptcy court did not rely on that ground. See Helvering v. Gowran, 302 U.S. 238, 245–46 (1937). Accordingly, appellant's argument for reversal is without merit.

## CONCLUSION

Based on the foregoing, the judgment of the bankruptcy court is affirmed. Because the facts and legal arguments are adequately presented in the briefs and record, the court dispenses with oral argument under Federal Rule of Bankruptcy Procedure 8019(b), as argument would not aid significantly the decisional process. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 1st day of March, 2021.

LOUISE W. FLANAGAN
United States District Judge

13